IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT CINCINNATI

| | |
|---|---|
| JOEL STEVENS, *et al.*, | : |
| *Plaintiffs*, | : Case No. 1:22-cv-284 |
| vs. | : Judge Jeffery P. Hopkins |
| ATRICURE, INC., *et al.*, | : |
| *Defendants*. | : |

# OPINION & ORDER

Relator Joel Stevens brings this *qui tam* action under the federal False Claims Act, 31 U.S.C. § 3729(a)(1)(A), (B), and (C) ("FCA"), predicated on alleged violations of the federal Anti-Kickback Statute ("AKS"), 42 U.S.C. § 1320a-7b(b), and supplemental claims under various state and local False Claims Act statutes and ordinances.[1] This matter is now before the Court on Defendants' motions to dismiss the Fourth Amended Complaint (Doc. 88) under Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure. Docs. 91, 92. Relator has responded to the motions (Docs. 99, 100) and Defendants have replied (Docs. 101, 102). For the reasons set out below, the Court **GRANTS** the motions, **DISMISSES** the federal claims **WITH PREJUDICE** and the supplemental claims **WITHOUT PREJUDICE**, and **DENIES** Relator's request for leave to further amend the complaint.

---

[1] The United States has filed a notice of declination of intervention, as well as that of several state and local jurisdictions whose laws Relator invokes. Doc. 29. No state or local jurisdiction has entered an appearance.

I.   BACKGROUND

Relator is a former sales manager employed by Defendant AtriCure, Inc. ("Defendant AtriCure"). Doc. 88, ¶ 13, PageID 175. Defendant AtriCure is "a medical device company that specializes in creating equipment used to treat atrial fibrillation." *Id.* at ¶ 14, PageID 175. Defendant Adventist Health is a healthcare organization that operates approximately twenty hospitals in various states, including Defendant St. Helena Hospital, which operates in California (collectively, "the Hospital Defendants") *Id.* at ¶ 15, PageID 176. Relator presents his claims in connection with Defendant AtriCure's ("with the knowledge, involvement and participation of" the Hospital Defendants) alleged "promotion of its medical devices through the offer and payment of illegal kickbacks to surgeons, electrophysiologists ["EPs"], and health care facilities, including hospitals and clinics," causing "false claims for payment to be submitted to and paid for by federal, state, city and county government healthcare programs" from "at least 2011 to the present." *Id.* at ¶¶ 2–3, PageID 173. Specifically, Relator alleges the following:

> First, AtriCure paid kickbacks in the form of cash payments that included lucrative consulting agreements through which it paid hourly and event-based fees to select groups of surgeons and EPs. These providers in turn promoted both the on-label and off-label use of AtriCure's expensive products at conferences, trainings and patient outreach events. AtriCure additionally made cash payments to surgeons and EPs to induce them to perform off-label procedures that would expand the surgical patient population, and to appear on AtriCure's behalf at promotional events for the ostensible purpose of providing or receiving educational information. Hospitals and their affiliated physician practices that agreed to host such events were awarded cash payments from AtriCure in the guise of "educational grants."

> Second, AtriCure extended in-kind kickbacks to customers by paying third parties to perform consulting and professional credentialing and advertising services free of charge for surgeons and electrophysiologists who promoted AtriCure's products for use in off-label procedures. AtriCure's remuneration in the form of paid third-party consulting services included reimbursement services, placement of providers on the patient referral website https://www.stopafib.org/ and radio advertisements.

> Third, AtriCure gave kickbacks to hospitals in the form of free capital equipment and free disposable medical device products, conditioned on further purchasing and/or off-label use. AtriCure's free capital equipment arrangements were routinely disguised as allegedly lawful loan agreements.

*Id.*, ¶¶ 5–7, PageID 174. These actions, Relator charges, "resulted in the submission of millions of dollars in false claims to the Government, to the detriment of taxpayers." *Id.* ¶ 10, PageID 175. Relator seeks monetary damages, civil penalties, costs, expenses, and attorneys' fees. *Id.* PageID 270–71.

## II. STANDARDS OF REVIEW

All Defendants move to dismiss the Fourth Amended Complaint for failure to state a claim under Rule 12(b)(6) and, specifically, for failure to sufficiently plead fraud under Rule 9(b) of the Federal Rules of Civil Procedure.[2]

A party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted" under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss under this provision, a complaint must include "only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This, however, requires "more than labels and conclusions [or] a formulaic recitation of the elements of a cause of action," and the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Indeed, under the plausibility standard set forth in *Twombly* and

---

[2] The Hospital Defendants also invoke Rule 12(b)(1) in their motion to dismiss, but only to the extent that they ask that the Court decline to exercise jurisdiction over the supplemental claims if those claims are not dismissed with prejudice for failure to state a claim under Rule 12(b)(6).

*Iqbal*, courts play an important gatekeeper role, ensuring that claims meet a plausibility threshold before defendants are subjected to the potential rigors (and costs) of the discovery process. "Discovery, after all, is not designed as a method by which a plaintiff discovers whether he has a claim, but rather a process for discovering evidence to substantiate plausibly-stated claims." *Green v. Mason*, 504 F. Supp. 3d 813, 827 (S.D. Ohio 2020).

In deciding a motion to dismiss, the district court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh,* 487 F.3d 471, 476 (6th Cir. 2007). *See also United States ex rel. Ibanez v. Bristol-Myers Squibb Co.*, 874 F.3d 905, 914 (6th Cir. 2017) (holding that, in a *qui tam* action, the court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the complaint contains enough facts to state a plausible claim to relief on its face). In doing so, the district court "need not accept as true legal conclusions or unwarranted factual inferences." *Gregory v. Shelby County,* 220 F.3d 433, 446 (6th Cir. 2000). A "'formulaic recitation of the elements of a cause of action' coupled with the controlling statutory scheme", will not suffice. *United States ex rel. Angelo v. Allstate Ins.*, 106 F.4th 441, 449 (6th Cir. 2024) (citing *Ibanez*, 874 F.3d at 917).

Furthermore, a relator asserting a claim under the FCA must, consistent with Rule 9(b) of the Federal Rules of Civil Procedure, "state with particularity the circumstances constituting fraud or mistake." *Chesbrough v. VPA, P.C.,* 655 F.3d 461, 466 (6th Cir. 2011) ("Complaints alleging FCA violations must comply with Rule 9(b)'s requirement that fraud be pled with particularity . . . ."). "In complying with Rule 9(b), a plaintiff, at a minimum, must 'allege the time, place, and content of the alleged misrepresentation on which he or she

relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud.'" *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 342 F.3d 634, 643 (6th Cir. 2003) ("*Bledsoe I*") (quoting *Coffey v. Foamex L.P.* 2 F.3d 157, 161–62 (6th Cir. 1993)).

## III. LAW AND ANALYSIS

### A. CLAIMS UNDER 31 U.S.C. § 3729(A)(1)(A), (B) AGAINST DEFENDANT ATRICURE[3]

Relator asserts federal claims under the FCA against Defendant AtriCure. That statute imposes civil liability on any person who "(A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval." 31 U.S.C. § 3729(a)(1)(A). Subsection (B) of the statute prohibits a person or entity from "knowingly mak[ing], us[ing], or caus[ing] to be made or used, a false record or statement material to a false or fraudulent claim." 31 U.S.C. § 3729(a)(1)(B). These subsections of the FCA

> impose[] liability when (1) a person presents, or causes to be presented, a claim for payment or approval; (2) the claim is false or fraudulent; and (3) the person's acts are undertaken "knowingly," *i.e.*, with actual knowledge or the information, or with deliberate ignorance or reckless disregard for the truth or falsity of the claim.

*Bledsoe I*, 342 F.3d at 640. *See also United States ex rel. Prather v. Brookdale Senior Living Communities, Inc.*, 892 F.3d 822, 830 (6th Cir. 2018); *United States ex rel. Sheldon v. Kettering Health Network*, 816 F.3d 399, 408 (6th Cir. 2016). In short, a relator must "specify the 'who, what, when, where, and how' of the alleged fraudulent scheme." *United States ex rel. Martin v. Hathaway*, 63 F.4th 1043, 1047–48 (6th Cir.), *cert. denied*, 144 S. Ct. 224 (2023) (quoting *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 877 (6th Cir. 2006) (cleaned up)).

---

[3] Relator also asserts a conspiracy claim under 31 U.S.C. § 3729(a)(1)(C) against Defendant AtriCure, which the Court addresses in connection with Relator's claim against the Hospital Defendants.

A violation of the AKS will constitute a false or fraudulent claim under the FCA. 42 U.S.C. § 1320a-7b(g); *Jones-McNamara v. Holzer Health Sys.,* 630 Fed. Appx. 394, 400 (6th Cir. 2015). *See also Martin*, 63 F.4th at 1052. The AKS prohibits the knowing and willful receipt, payment, or offer of payment of "any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind" to induce the referral of an item or service for which payment may be made under a federal health care program. 42 U.S.C. § 1320a-7b(b)(1)(A), (2)(A). "Remuneration" is defined by the AKS as the "transfer of items or services for free or for other than fair market value." 42 U.S.C. § 1320a-7a(i)(6). "Remuneration" in this context is limited to "payments and other transfers of value." *Martin*, 63 F.4th at 1048. Although the AKS does not define the notion of "inducement," "a kickback violation entails 1) remuneration to a person or entity in a position to refer Federal health care program patients 2) that could reasonably induce the person or entity to refer such patients." *Jones-McNamara*, 630 Fed. App'x at 401 (citing *U.S. ex rel. Perales v. St. Margaret's Hosp.*, 243 F. Supp. 2d 843, 852–54 (C.D. Ill. 2003)). "When it comes to violations of the [AKS], only submitted claims 'resulting from' the violation are covered by the [FCA]". *Martin*, 63 F.4th at 1052. This requires, the Sixth Circuit held, a showing of "but-for causation." *Id.*

Relator summarizes his theory of liability as follows:

> AtriCure engaged in an unlawful promotional scheme, in concert with Defendants Adventist, Inc. and St. Helena Hospital, involving the offer and payment of illegal remuneration to healthcare providers and institutions to induce purchases of AtriCure's medical devices

Doc. 100, PageID 400. Defendant AtriCure argues that these claims must be dismissed because the Fourth Amended Complaint fails to identify any claim for payment by the government, fails to allege that any claim for payment was false or fraudulent, and fails to identify any false record. Doc. 91. Because the Court concludes that the Fourth Amended

Complaint fails to identify any claim for payment by the government with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure, the Court limits its consideration to that issue.

At the pleading stage, a claim under § 3729(a)(1)(A) or (B) "'requires proof that the alleged false or fraudulent claim was "presented" to the government.'" *United States ex rel. Ibanez v. Bristol-Myers Squibb Co.*, 874 F.3d 905, 914 (6th Cir. 2017) (quoting *United States ex rel. Marlar v. BWXT Y-12, LLC*, 525 F.3d 439, 445 (6th Cir. 2008)). *See also United States ex rel. Sheldon v. Kettering Health Network,* 816 F.3d 399, 411 (6th Cir. 2016) (noting that the FCA "attaches liability, not to the underlying fraudulent activity or to the government's wrongful payment, but to the claim for payment."). The particularity requirement of Rule 9(b) of the Federal Rules of Civil Procedure in this context requires that the challenged pleading allege an actual false claim. *U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.,* 501 F.3d 493, 504 (6th Cir. 2007) ("*Bledsoe II*") ("[P]leading an actual false claim with particularity is an indispensable element of a complaint that alleges a FCA violation in compliance with Rule 9(b)."). "[W]here a relator alleges a 'complex and far-reaching fraudulent scheme,' in violation of § 3729(a)(1), it is insufficient to simply plead the scheme; [he] must also identify a representative false claim that was actually submitted to the government." *Ibanez*, 874 F.3d at 914. (quoting *Chesbrough*, 655 F.3d at 470).

Although the "default rule" is that a relator "must identify a representative claim that was actually submitted to the government for payment," *U.S. ex rel. Owsley v. Fazzi Assocs., Inc.,* 16 F.4th 192, 196 (6th Cir. 2021), *cert. denied* 2022 WL 9552617 (Oct. 17, 2022), the Sixth Circuit has recognized that, under some circumstances, a relator can satisfy the particularity pleading requirement of Rule 9(b) in an alternative manner: A relator "'can

otherwise allege facts—based on personal knowledge of billing practices—supporting a strong inference that *particular identified claims* were submitted to the government for payment.'" *Id*. (quoting *Prather,* 838 F.3d at 769 (stating that the pleading standard is satisfied if the relator includes allegations showing specific personal knowledge relating directly to billing practices sufficient to support a strong inference that a false claim had been submitted)). *See also United States ex rel. Crockett v. Complete Fitness Rehab., Inc.,* 721 F. App'x 451, 457 (6th Cir. 2018) (observing that *Prather* "recognized a narrow exception to this rule for billing employees who have detailed personal knowledge of the submitting entity's billing practices"). Allegations of personal knowledge of the fraudulent scheme, but without allegations sufficient to raise a "strong inference" that fraudulent claims were submitted to the government, will not suffice. *United States ex rel. Eberhard v. Physicians Choice Lab'y Serv's, LLC,* 642 Fed. App'x 547, 552 (6th Cir. 2016). "[T]he touchstone is whether the complaint provides the defendant with notice of a specific representative claim that the plaintiff thinks was fraudulent." *Owsley*, 16 F.4th at 197. However, this relaxed application of Rule 9(b)'s particularity requirement is narrowly construed and rarely approved. *See, e.g.*, *id*. at 196–97 (holding that the relator's identification of particular patients and of allegedly fraudulent upcoding of their diagnoses in a particular year, but the relator's failure to identify "the dates on which she reviewed the. . . forms for these patients, nor the dates of any related claims for payment, nor the amounts of any of those claims" was insufficient to enable each named defendant "to pluck out—from all the other claims they submitted—the five that Owsley was alluding to here.").

      The Fourth Amended Complaint fails to identify any specific claim actually submitted to the government for payment. However, Relator argues that he has satisfied the relaxed pleading standard recognized in *Prather*:

> Here, while Relator has not provided initials [of patients], he has provided exact birthdates, procedure types, and specific parts either pre-authorized (¶ 254) or actually used (¶¶ 240, 250), including, for the latter, specific part/lot numbers (id.), and for all example surgeries, the prices AtriCure charged for those parts. ¶¶ 240, 250, 254.
>
> \*\*\*
>
> . . . Relator alleges similar details about the claims, including providing the date the procedure was performed (Compl. ¶¶ 239, 245–46, 249), the type of procedure (VATS/MAZE, Compl. ¶¶ 245–46), the hospital where it was performed (Compl. ¶¶ 245 (Porter Adventist), 246 (same), 249 (University of Utah Health), the identity of the governmental insurance carrier (Medicare, Compl. ¶¶ 245–46), and identifying information for the patient: date of birth, rather than initials. (Compl. ¶¶ 239, 245–46, 249). In addition, as discussed supra, Relator provides specific batch/lot numbers and/or prices of the materials billed for. (Compl. ¶¶ 240, 246, 250, 254).

Doc. 100, PageID 413. In support of this position, Relator also refers to a spreadsheet, allegedly prepared by Defendant AtriCure, that explains how the use of its devices would be reimbursed by Medicare. *Id*. at PageID 415. *See* Doc. 88, ¶ 211, PageID 227.

In making this argument, Relator relies on two decisions from the Southern District of Ohio. In *United States ex rel. Lynch v. University of Cincinnati Medical Ctr., LLC*, 1:18-cv-587, 2020 WL 1322790, \*28 (S.D. Ohio Mar. 20, 2020), this Court found a "strong inference" that false claims for payment had actually been presented where relator, a physician employed by one defendant and a member of another defendant's attending medical staff, provided a case log from the billing manager showing the allegedly fraudulent procedures, patient initials, invoice numbers, payment status, the date posted, and the identity of the governmental insurer; an email chain in which an employee represented that "we will be billing only Medicare"; and an employment agreement that explained why the relator could not produce detailed allegations about the company's billing procedures. *Id*. at 28–30. This Court has also found sufficient a pleading that included internal monthly reports showing that the defendant

provider had actually submitted claims for payment to the government, the amounts submitted, and the times submitted, as well as the initials of 19 patients who had undergone surgery at the defendant hospital and the dates of those procedures. *United States v. Millennium Radiology, Inc.*, 1:11-cv-825, 2014 WL 4908275, *9 (S.D. Ohio Sept. 30, 2014).

The Court concludes that Relator has not alleged facts sufficient to warrant the application of the "relaxed" pleading standard recognized by the Sixth Circuit in *Prather*. Relator, a sales representative employed by Defendant AtriCure, does not allege that his employer ever submitted a claim to any governmental agency, nor does he allege any personal knowledge of the billing practices of any of the Defendants. Rather, Relator refers to certain medical procedures, either scheduled or performed, and in some instances he provides the date of birth of the alleged patient.

Relator first refers to procedures "scheduled" to take place at a Veterans Affairs ("VA") hospital in California in 2016 and 2017, but he provides no date of an actual procedure, nor does he provide any patient information. Doc. 88, ¶ 231, PageID 229–30. Relator also alleges that Dr. Sanjay Tripathi, for whom Defendant AtriCure allegedly paid approximately $1,900.00 for food, travel, and lodging in connection with programs at Defendant St. Helena Hospital in 2014 and 2015, "scheduled" two surgeries in 2015 in connection with patients who are identified only by date of birth. *Id.* at ¶ 94, PageID 197; ¶¶ 245–46, PageID 232. As to each of these patients, Relator alleges, "this patient was insured by Medicare throughout 2015, such that CMS was billed for the entire surgery, including for AtriCure's products." *Id.*

This Court concludes that these allegations are insufficient to afford Defendant AtriCure "notice of a specific representative claim that the plaintiff thinks was fraudulent."

*See Owsley*, 16 F.4th at 197. *See also Chesbrough*, 655 F.3d at 471 (finding insufficient a complaint that provided detail as to the time frame in which the alleged fraud occurred, the place and content of the alleged fraudulent scheme, an allegation that the United States was injured as a result of improper billing, "studies that contained patient, physician, and technician names and dates," and a contract that stated that the defendant would be responsible for all billing).

As even Relator acknowledges, scheduled medical procedures do not always occur at all, let alone on the date originally scheduled. *See* Doc. 100, PageID 415 (acknowledging that scheduled procedures may be "delayed"). Relator's references to the dates on which procedures were scheduled simply do not give Defendant AtriCure notice that the procedure actually occurred, nor does it clarify the date on which any claim that may have been submitted in connection with that procedure was actually submitted. Moreover, a date of birth would not necessarily lead to the identification of the particular patient whose treatment was submitted for reimbursement. Furthermore, and Relator's conclusory assertions notwithstanding, the mere fact that a patient is "eligible" for Medicare coverage by reason of his or her age says little about whether a claim was actually submitted to Medicare in connection with that patient's medical care.

The Fourth Amended Complaint also refers to procedures that allegedly actually occurred. On December 18, 2014, Relator alleges, Dr. Tripathi performed a procedure on a patient whose date of birth rendered the patient "eligible for Medicare" "such that CMS was billed for the surgery." *Id.* at ¶ 239, PageID 231. Relator also lists the AtriCure products allegedly used during that procedure and "billed to CMS for a total of at least $ 11,000". *Id.* at ¶ 240–41, PageID 231. Dr. Genesh Kumpati, for whom Defendant AtriCure allegedly paid

approximately $2,200.00 for food and lodging in 2014 (*id*. at ¶ 94, PageID 197), and allegedly provided free consulting services to assist in reimbursement efforts in 2015, including reimbursement by Medicare (*id*. at ¶ 253, PageID 234) performed a surgical procedure in May 2015 using AtriCure products on a patient identified, by date of birth, as being "eligible" for Medicare. *Id*. at ¶ 249, PageID 233. "Relator alleges that this patient was on Medicare throughout 2014, such that CMS was billed for the surgery." *Id*. (emphasis added). Dr. Kumpati also "scheduled" a surgery for October 2015 at a VA hospital for which an AtriCure product had been "pre-approved" for $ 1,995.00. *Id*. at ¶ 254, PageID 234. Relator alleges that "this surgery occurred and . . . shortly thereafter, a claim for $1,995 was submitted to the United States to pay for this AtriCure product." *Id*.

      These allegations relating to procedures that actually occurred, which may provide more information than the allegations relating to procedures that had been merely scheduled, are nevertheless deficient. As an initial matter, Relator offers no identifying information whatsoever regarding the patient involved in the procedure scheduled at the VA hospital for October 2015 and, although Relator alleges that this procedure "occurred", he does not affirmatively allege the date on which the procedure actually occurred. Moreover, Relator's listing of AtriCure products allegedly utilized during these procedures provides little notice to Defendant AtriCure of any particular claim; as even Relator acknowledges, reimbursement is based on the procedure performed, not the costs of the products or devices used during the course of that procedure. *See id.* at ¶ 169, PageID 217; *see also* Doc. 102, PageID 444 n. 5 ("In no way does the lot number or sales price of devices that are not billed to the government help identify a particular claim submitted to the Government.").

In short, the Court concludes that Relator's Fourth Amended Complaint does not allege a false claim with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure sufficient to state a claim for relief under 31 U.S.C. § 3729(a)(1)(A) and (B).

### B. CONSPIRACY CLAIM AGAINST ALL DEFENDANTS

Relator pursues only a conspiracy claim under 31 U.S.C. § 3729(a)(1)(C) against the Hospital Defendants (Doc. 99, PageID 388 ("Hence, Relator will not seek to advance claims against St. Helena or Adventist under 31 U.S.C. § 3729(a)(1)(A) or (a)(1)(B).")), and also pursues a conspiracy claim against Defendant AtriCure. The FCA imposes civil liability on any person or entity who "conspires to commit a violation of subparagraph (A) [or] (B)". 31 U.S.C. § 3729(a)(1)(C). In order to state a conspiracy claim under 31 U.S.C. § 3729(a)(1)(C), a relator must allege, with particularity, "a plan to get false claims paid." *Ibanez*, 874 F.3d at 917. "[I]t is not enough for relators to show there was an agreement that made it *likely* there would be a violation of the FCA; they must show an agreement was made *in order to* violate the FCA." *Id.* The failure to allege a "conspiratorial statement" showing that "the plan was made in order to defraud the government," in the absence of a claimed violation of any other section of the FCA, "renders insufficient the otherwise bare allegation that there was an FCA conspiracy." *Id*.

The Court has already determined that Relator has failed to sufficiently plead a violation of 31 U.S.C. § 3729(a)(1)(A) or (a)(1)(B). As it relates to a conspiracy claim against Defendants under § 3729(a)(1)(C), the Fourth Amended Complaint alleges: (1) that one Dr. Dunnington, a "resident" at St. Helena Hospital (Doc. 88, ¶ 235, PageID 230) promoted and/or performed procedures using AtriCure products at that facility (*id.* at ¶ 94, PageID 197), that Defendant AtriCure conducted training events at St. Helena Hospital for physicians and

others as a way to market AtriCure products (*id.* at ¶ 102, PageID 199), that AtriCure "developed" St. Helena Hospital as an "Integrated AF[ib] Program" (*id.* at ¶ 147, PageID 211), that St. Helena Hospital served as an "access point[]" for the development of other such programs (*id.* at ¶ 148, PageID 211), and that Defendant AtriCure paid to the Hospital Defendants "cash grants" "ostensibly relating to patient education and professional training" (*id.* at ¶ 149, PageID 212), the educational content of which was designed and/or funded by Defendant AtriCure and which was "intended to convince surgeons and EPs, and their hospital affiliates, to use AtriCure products" (*id.* at ¶ 151, PageID 212).

Conspicuously missing from the Fourth Amended Complaint is any particularized allegation that these Defendants participated in, or were even aware of, the submission to the government of any fraudulent claim or claim violative of the AKS as part of the alleged conspiracy. *See Ibanez*, 874 F.3d at 917. Under these circumstances, the Court concludes that the Fourth Amended Complaint fails to state a claim for relief under 31 U.S.C. § 3729(a)(1)(C) against Defendants.

### C. REQUEST FOR LEAVE TO AMEND

Relator asks that, should claims asserted in the Fourth Amended Complaint be deemed deficient, he be granted "leave to amend a Fifth Amended Complaint, including to allege any additional facts recited herein, as none of Relator's prior complaints have yet been tested by a motion to dismiss." Doc. 99, PageID 395. A party may amend his pleading with the opposing party's consent or with leave of the Court, Fed. R. Civ. P. 15(a), and a court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). In this case, the Court concludes that justice does not require leave to file a sixth complaint.

Relator filed his original complaint (Doc. 1) almost eight years ago, in January 2017. Since that time, Relator has filed four (4) amended complaints. Docs. 24, 28, 51, 88. The Court has concluded that Relator's most recent amended complaint (Doc. 88), fails to state a claim for relief under federal law because Relator has failed to allege with the required particularity that a false or fraudulent claim was actually presented to the government. Nothing stated in Relator's memoranda addressing Defendants' motions to dismiss persuades the Court that Relator, if granted leave to file a sixth complaint, could remedy this deficiency. Under these circumstances, the Court concludes that its discretion is better exercised by declining to grant leave to further amend the complaint.

Relator's request for leave to further amend the complaint is therefore denied.

**D. SUPPLEMENTAL CLAIMS**

In addition to three federal claims under the FCA, the Fourth Amended Complaint asserts 34 supplemental claims under various state and local laws. Doc. 88, PageID 236–70.[4] Each of those claims refers to and relies on the factual allegations made in connection with Relator's federal claims. With the grant of their motions to dismiss Relator's federal claims, Defendants ask that Relator's supplemental claims also be dismissed, either as failing to state a claim upon which relief can be granted or in the exercise of the Court's discretion. Doc. 91, PageID 330–31; Doc. 92, PageID 356–57.

A district court may decline to exercise supplemental jurisdiction under 28 U.S.C. § 1367 over a claim arising under state or local law if "the district court has dismissed all claims

---

[4] Because Maryland's False Health Claims Act requires the dismissal of a claim asserted under that Act if the State does not intervene and proceed with the action, Count 15 of Relator's Third Amended Complaint (Doc. 51), which asserted a supplemental claim under that Maryland law, was dismissed prior to the transfer of this action to this Court. Doc. 30, PageID 507. However, Relator's Fourth Amended Complaint reasserts that claim. Doc. 88, PageID 247–48

over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "[W]hen the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice." *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 350 (1988) (citing *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 726–27 (1966)). The Sixth Circuit "applies a strong presumption against the exercise of supplemental jurisdiction once federal claims have been dismissed." *Packard v. Farmers Ins. of Columbus, Inc.*, 423 F. App'x 580, 584 (6th Cir. 2011). Jurisdiction should ordinarily be retained "only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues." *Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006).

Although Defendants argue that Relator's supplemental claims are fatally deficient, the Court, in the exercise of its discretion, declines to consider the sufficiency of those claims at this stage of the proceedings. *See Martin,* 63 F.4th at 1055 (holding that, because relators failed to allege a cognizable federal claim under the AKS, "the district court did not abuse its discretion when it declined to exercise supplemental jurisdiction over" the remaining state law claim). Rather, the Court will dismiss Relator's claims arising under state and local laws without prejudice to assertion in the appropriate forums.

## IV. CONCLUSION

For the reasons stated, the Court **GRANTS** AtriCure's Motion to Dismiss the Fourth Amended Complaint (Doc. 91) and Defendants Adventist Health Systems/West and St. Helena Hospital's Motion to Dismiss Fourth Amended Complaint (Doc. 92), and **DENIES** Relator's request to further amend the complaint. Relator's federal claims under the False Claims Act, 31 U.S.C. § 3729(a)(1)(A), (B), (C), are **DISMISSED WITH PREJUDICE**.

Relator's supplemental claims under state and local laws are **DISMISSED WITHOUT PREJUDICE**.

    **IT IS SO ORDERED.**

September 12, 2024

                                              Jeffery P. Hopkins
                                          United States District Judge